In re. Valdellon, Mark A. Wolfe, counsel for appellants Melanio L. Valdellon and Ellen C. Valdellon. Neil J. Cooper, counsel for appellees, PHP Mortgage Corporation and Wells Fargo Bank, N.A. as indentured trustee. All right, Mr. Wolfe, would you like to reserve any time for rebuttal? Yes, please. I'd like to reserve five minutes for rebuttal. All right. Thank you. You may begin. Thank you. Good morning. Mark Wolfe appearing on behalf of Mr. and Mrs. Valdellon. And here the Valdellons are requesting that the court go beyond simply reversing the bankruptcy court's ruling. We are requesting that the court find and determine that Wells Fargo and PHH are in violation of 11 U.S.C. 524-I. Now, I have some concerns that the mild punitive damages that may be awarded by the bankruptcy court may not be sufficient to coerce Wells Fargo and PHH into compliance. And it may therefore be appropriate to send the matter back to the district court with recommendations. Kind of getting ahead of myself. We're here before this court because the bankruptcy court has again dismissed Valdellon's complaint with prejudice without examining the allegations that Wells Fargo and PHH are in violation of 11 U.S.C. 524-I. In this instance, Judge Hyme found that 524-I was inapplicable as a matter of law after making findings that there was an incurable default in Valdellon's plan. Additionally and alternatively, the court found that Valdellon's had not pled a plausible claim for relief under 524-I because Wells Fargo and PHH filed a response to notice of final cure acknowledging that all arrears were cured and post-petition payments were made. So first, as to plausibility. Contrary to the bankruptcy court's ruling, it is not logical to conclude that payments were properly credited simply because Wells Fargo filed a response to notice of final cure. That's true. You can't find that when there were monthly statements that were sent showing delinquency collection activity which was contrary to the notice of final cure as well as Wells Fargo and PHH's own admissions that they were collecting additional amounts they were claiming were underpaid by the Chapter 13 trustee. What I was going to say is, well, even let's assume that's a plausible conclusion. It's not the only conclusion that you could reach, the one that the bankruptcy court reached, right? You are pleading alleged that these facts that you just stated, right? And so is it also an alternate plausible conclusion, the one that you asserted? Yes, I do believe so. And I think the district court also recognized that in our prior appeal. The district court found that they had great concerns regarding the actions that were taken by Wells Fargo and PHH. Counsel, the point I think Judge Brandt's making and the one that I'm concerned about also is you're suggesting that you have an absolute proof case that we should enter judgment. And what I think we're struggling with is if we go with you, we think you've stated a claim under 12b-6, the motion should have been denied. But they've asserted some confusion about when payments be. In other words, let's say the plan ended in March of 2019. There were payments that were made after March, but before the statements that were received in September that stated there were delinquent amounts. And we don't know exactly what the proof is with regard to those. You take the position that they're absolutely cured and everything was current as of some date after the plan was completed. But those facts might not be true or they might be true, but there's some contest, isn't there? So even if you win, wouldn't we want to simply remand for a trial and say the complaint shouldn't have been dismissed? Well, Your Honor, I think not. There was the response to notice of final cure, and that was many months after the debtors completed their 60-month plan. But could he actually give a notice that would extend beyond the plan period when he's the trustee and only responsible for payments up through the plan? In other words, can you have it both ways? Can you say, well, he was wrong to ask us to make payments beyond the plan period, but then since we made the payments and we seem to have cured it, he could give a notice that is extensive beyond his powers as trustee? Well, the notice simply acknowledged what the trustee paid. There was a dispute as to what the trustee was required to pay, and there was a motion to dismiss that was filed, and that motion was resolved by the parties. It was a disputed motion. And debtors, Valdelaz, contended that the trustee was asking for payments that were not due under the plan. Nonetheless, it was agreed by the parties that it would be more efficient to simply allow the trustee to make those payments. That way, we had a good record of what was paid. The payment in the notice of final cures by the trustee indicated that all the pre-petition arrears were cured and that post-petition maintenance payments were made. It didn't necessarily assert that all of the maintenance payments were payments under the 60-month plan, but it was payments were made, and it was agreed to, and it gave the parties the opportunity to litigate the issues of whether or not the arrears were cured and maintenance payments were made. That was the whole point. Whether it was through May or March or September, as the trustee had put it, that was the party's opportunity to bring these issues to light, to litigate this and find out what actually happened with the Chapter 13. So I guess what I'm concerned about is if they didn't oppose it and, in fact, said that the trustee's notice was accurate, but were only concerned about the 60-month period, didn't read the notice to actually require them to agree that beyond the 60-month period up to the date of the notice in September or later that the plan payments were current, they may not have objected, may have agreed, because they didn't disagree with the earlier period, but may have some disagreement with the later period. That's what I'm concerned about. I'm sorry, Your Honor. It's interesting, but the trustee's notice of final cure indicated that he had paid all pre-petition arrears and paid all of the post-petition payments through September. The response acknowledged that, acknowledged that the pre-petition arrears were cured, and indicated that the payments were made through October. They recognized that Valdez-Lanz made their October monthly payment directly, and not just agreeing with the trustee's notice of final cure. In their response, they indicated, yes, the account was fully current even through October. So they apparently did recognize that this was including, and their response to the notice of final cure included post-trustee payments, so necessarily included post-plan payments. Did you want to move to one of the other two issues before we use all your time? Yes. As to the applicability of 524-I, you know, the bankruptcy court's ruling strips the order of discharge and Valdez-Lanz Chapter 13 of all meaning. I think it's just improper to find that they're, you know, years after the bankruptcy is complete to find that there is some incurable material default in the plan, and then deny Valdez-Lanz the benefit of their discharge order. I have a litany of reasons why the finding of an incurable material default is inappropriate. Everything from the res judicata effect of the order confirming plan, excuse me, the res judicata effect of the order of discharge, the fact that the prior ruling allowed the motion by the trustee to be dismissed when it was withdrawn. A real problem with the fact that that finding was based solely on allegations in the Chapter 13 trustees motion which was withdrawn when it was disputed. On top of that, it was just wrong on the facts. Ironically, Your Honor, it's being bound by the plan and the order of discharge is the same issue that Valdez-Lanz are bringing in the underlying proceedings. From Wells Fargo and PHH's own statements, we see that they're boldly admitting that they were collecting amounts that they allege were being underpaid by the Chapter 13 trustee. They disagree with the pre-petition arrears amount. They disagree with the amount of the monthly payments being made by the trustee. And they now disagree with the notice of final cure and their own response to the notice of final cure. While they initially accepted payments directly from Valdez-Lanz, after the entry of the order of discharge, they demanded payments for delinquencies that were made by the trustee. They rejected Valdez-Lanz payments. They added additional fees. They commenced foreclosure proceedings. And they did all this because they claim that they have a lien and their lien allows them to collect more than they're allowed under the Chapter 13. So you filed a proof of claim for the creditor, right? I'm sorry, it's hard to hear you. Sorry, you filed a proof of claim on behalf of Wells Fargo because they didn't file a claim? Is that the case? No. Yeah, the debtor's attorney filed a proof of claim, correct. All right. And Wells Fargo did not modify the claim or amend it in any way, right? Well, they supplemented the claim seven times, but they did not object to the claim and they did not amend the claim as to the amount of arrears, and they did not amend the claim as to the amount of the monthly payments before their first supplement. All right. And then after their last supplement, the plan was modified to increase the payment amount from that date until the termination of the plan. And those payments were reflected in the trustee's motion, and they were all consistently made at $3,685 per month. Even if it was more than one payment in the month that was received, they totaled that amount for every month up and through the end of the plan term in March of 2019. Yes, essentially correct. Okay. We're taking some of your time. I don't know if you want to reserve or how you want to deal with it. Your Honor, I would reserve the rest of my time. All right. Thank you. Mr. Cooper? Thank you. Good morning, and may it please the Court. My name is Neil Cooper. I represent PHH Mortgage Corporation and Wells Fargo Bank as trustee. The first point I'd like to raise is debtors' contention that there was no breach of the plan and that the Bankruptcy Court perhaps went outside the pleadings. That's not within the Second Amendment complaint. In the Second Amendment complaint, debtors allege they filed a plan in March 2014 and were still trying to perform through September 2019. Those are paragraphs 19, 41, 42, and 146 through 148. So even if the Bankruptcy Court went outside the pleadings to understand what was going on, the complaint itself establishes that the plan payments were not complete until September and therefore establishes the plan was an incurable breach as the Bankruptcy Court held. But, Counsel, he went to the motion filed by the trustee. If the trustee's motion was wrong, mistaken, purposely, intentionally incorrect, it doesn't matter, then that's the sole basis for his decision. Then we reverse, don't we? Because we have a de novo review. You do, but the court independently reviews the record, which you do. You can see that the Second Amendment complaint says the same thing that the court went to. So even though he looked at one thing and you're looking at perhaps the right thing, arguably, it's the same conclusion that you're both going to reach. No, it isn't, is it? If we conclude the trustee's report was incorrect, that in fact he mistakenly asserted there was a default when there wasn't, irrespective the plan ended on a specific day, we know what day that is. Why do we know that? Because the plan term can only be 60 months. It doesn't matter what they put in the complaint. If the plan was current, the trustee was incorrect. If that's true, then the decision he made is erroneous, isn't it? I don't believe we get there because the operative pleading itself states that they were still performing through September. So I don't think we can reach the conclusion that the plan actually ended earlier. It has to end. For him to find there's a material default, it has to end at some point, doesn't it? It can only be under the code of 60-month plan at most. That's the reason he determined that they were in material default, was they didn't complete the plan payments under his theory within the 60-month period. It was incurable at that point. If it could extend beyond, then the Tenth Circuit case he relies upon and all the other theories that he goes with go out the window because there's no limitation on when they can cure. I think that the Second Amendment complaint establishes or admits that they hadn't finished by the 60-month deadline. How can that be true? By the 60-month deadline, that's demonstrated by the exhibit that they pointed out that's in the brief that's attached to the trustee's motion where his assistant lays out the payments that were made under the plan and when before the modification was made and then subsequent to the modification all the way through the end of March. Under the 60-month plan, there's no default. You certified in September that they had made all of the pre-petition arrearage payments, all of the post-petition plan payments, so you don't have the ability today to tell me the judge was right when your position was. That's not true. You certified that. You weren't required to but did. If we're accepting that as true, then the bankruptcy court's conclusion that that's kind of the only plausible explanation that there was no misapplication then comes into play. I mean, if we're saying notice of final cure wasn't… It isn't misapplication. It's crediting, and those are different terms, aren't they? You can apply the payments any way you want, but the plan says you will credit them in a specific manner. If you don't do that, who cares if you applied the payments to pre- or post-petition amounts? I'm sorry. I don't see the difference. Well, crediting says they're going to be paying you $19,000 in arrearage payments. Everything else that they pay you is going to be applied to the regular mortgage payments. If you say, no, we applied $20,000 or $21,000 or whatever number, not $19,000, to the pre-petition arrearages, you've made an application of the payments, but you haven't credited them in accordance with the terms of the confirmed plan because that specified exactly how much was going to be credited to the pre-petition amounts. So, your application of payments wasn't incorrect. You can apply them any way you want. You can't credit them differently under the code than the plan provides. There's a distinction there. I hope you get the difference. I do understand that, and I apologize if I was using them incorrectly. We agree that you have to credit them according to the plan. And if we're going off the notice of final cure as being accurate, then I don't see where there was a failure to credit sufficient for 524I. Because you then issued a statement that said you were in arrears after the completion of the plan payments, where you said you have done everything that's required for pre-petition payments, arrear payments, and you are current on all post-petition payments. There could be nothing more than a regular monthly mortgage payment that would be due. There could be no other amounts due, but that's not what your statement was, that you sent them. You sent them a statement that said they're in default. $20,000 you still owe. That couldn't be true. If it was properly credited, could it? At that point, then I would think, okay, are we admitting that the monthly statement was accurate? I mean, we'll agree that both things can't be true. The monthly statement cannot be accurate if the notice of final cure is accurate. I'm still not seeing where he's pled where there is evidence of a failure to credit. If you make a demand for a payment that's in excess of the regular monthly payment at the conclusion of the statement that everything is the final cure payment, everything is current, if you make a demand for anything more than that, hasn't he stated a claim under 524I? No, because that's not evidence of a failure to credit. I mean, that could be the monthly statement was wrong, period. That doesn't mean that any payment made during the bankruptcy was not credited as it was intended to be. That would show that there was an erroneous monthly statement. That would be true if it happened once. If it happens every month and then you refuse to accept future payments, doesn't that evidence an intent not to credit appropriately? I don't think that shows a failure to credit or a 524I. The application and credit issues, what was the basis for the collection actions when you instituted foreclosure proceedings? I'm sorry, could you repeat that? Well, you started foreclosure, correct? You started those proceedings. What was the basis of that? That there were unpaid amounts owed on the loan. But they couldn't be for anything that happened pre-completion of the plan, right? Because you said they were current at that point. And they couldn't be for any amounts in excess of a regular monthly payment that would have been due because you've said that they were current as of September. So what else could it be besides an erroneous crediting of payments? I mean, the amounts, as it's been set forth, they filed a proof of claim. It understated the amount due. So you didn't amend it. No, you didn't amend it. No, there was no obligation to. The amounts paid for the pre-petition went towards and were credited for pre-petition. That doesn't mean that the other amounts go away. I mean, that's under NRA Broaders. And so saying PHH can credit according to the plan and for there still to be an amount due. Not when they make a Notice of Final Cure that says everything is current and you agree. Then that's inconsistent, isn't it? It is inconsistent, but the Notice of Final Cure is for Rule 3002.1, which was inapplicable in this case. So you filed seven of those statements during the course of the case, and they relied upon them to their detriment to increase plan payments every time to get compliance with the court and with you. How is that fair for you now to say, well, that rule doesn't really apply? We're here today on whether there was a 524i violation. They can go off to state court saying promissory estoppel, negligent misrepresentation, we want an accounting. There is no basis for the bankruptcy court to have jurisdiction over this, and there is no 524i claim fled. And so we agree with the bankruptcy court that, you know, dismissed the state court claims without prejudice. They have remedies outside of the bankruptcy court, and frankly, that's where we think this should go. So I'll take it from the front. He didn't rule that way, though. He didn't rule that he didn't have jurisdiction over the bankruptcy over the 524 action. He dismissed it without prejudice and leave to amend. He didn't say he didn't have jurisdiction, correct? Correct. Yes, he dismissed it because there was no 524i violation. But as the state court claims, he found he lacked jurisdiction. So I'm happy to take any further questions. Otherwise, I'll cede the rest of my time. I don't have them. Julie, we couldn't hear you again. I'm sorry, Your Honor, I can't hear you. Yeah. Julie, for whatever reason. I've been having trouble. Yeah. Now it's low, but we can hear a little bit. All right. There it's better. All right. Mr. Wolf, why don't you finish up the rest of your argument? Oh, thank you, Your Honor. Your Honor, it's interesting. Mr. Cooper is correct. They had no obligation to amend their claim. They could have amended their claim if they wanted to receive the correct amount or what they believed is the correct amount. Otherwise, the plan is clear. The only manner for payment of prepetition arrears is through the trustee. So while they didn't have to, to the extent that they chose not to amend their claim, they waived any right to receive any prepetition arrears beyond the amount of the claim. Second, very briefly I wanted to talk about the emotional distress. It was kind of interesting that the bankruptcy judge continued the hearing for the purposes of the parties briefing the emotional distress issue only to make that moot by dismissing the case with prejudice. I didn't spend a whole lot of time on that issue because the underlying issue is, frankly, much more important. But in the end, I think the old soil, as it's called, has led to a number of cases that have found that it is appropriate to award emotional distress damages in cases of violations of the automatic stay as well as violations of the discharge injunction. And I think that the court could follow those reasoning. Finally, there really is no deadline that needs to pass before a creditor can choose to collect differently from what's allowed under the Chapter 13 plan. Here it appears that the creditor has been saying, you know, we complied with the plan. We didn't attempt to collect while the Chapter 13 was going on. But somehow as soon as the Chapter 13 order of discharge was entered, they're then permitted to collect more based upon their lien. That's just a fallacious argument, Your Honor. The rights of a creditor based on their lien are simply to enforce the terms of the note. And the note in this case has been modified by the Chapter 13 plan related to the cure of arrears and specifically also related to the amount of the monthly payments that are to be made by the trustee for ongoing monthly payments. It doesn't change those numbers. It simply affords the creditor an opportunity to advise the debtor, the trustee, and the court of what those numbers are. If they don't amend their claim or file a claim or file something, a supplement, to indicate what the correct post-petition payment amount is, they're essentially waiving it and accepting the payments that are being made by the Chapter 13 plan. I have nothing further unless the court has questions. Any questions? No. All right. Thank you. This will be submitted. Madam Clerk, please call the next case.
judges: Brand, Gan, and Corbit